CHARLTON MEMORIAL HOSPITAL, Morton Hospital, and St. Luke's Hospital of New Bedford, Inc., Plaintiffs,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 91–11480–K.

United States District Court, D. Massachusetts.

March 9, 1993.

Andrew L. Matz, Mark A. Pogue, Jeffrey M. Alexander, Edwards & Angell, Providence, RI, for plaintiffs.

Roberta T. Brown, U.S. Attorney's Office, Judith S. Yogman, Attorney General's Office, Boston, MA, for defendant.

## MEMORANDUM

KEETON, District Judge.

### I.

■ Plaintiffs brought this action to challenge the payment rates established by the Secretary of Health and Human Services ("Secretary") under Medicare's Prospective Payment System ("PPS"). Asserting claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Equal Protection Clause of the Constitution of the United States, plaintiffs challenge the "wage index" values calculated for the "New Bedford New England County Metropolitan Area" for fiscal years 1986 through 1988. Thus, though formally filed as a "civil action" in a United States district court, this proceeding is one for judicial review of agency action under the standard as to scope of review prescribed in the APA. Plaintiffs add to their complaint counts alleging violations of the Equal Protection Clause, and they demand a jury trial. These additions, however, cannot so transform the case that it ceases to be primarily a case involving judicial review of agency action.

Ordinarily a reviewing court must hold agency action unlawful if the action is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;...." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (quoting 5 U.S.C. § 706(2)(A)). *See also Sierra Club v. Marsh,* 976 F.2d 763, 769 (1st Cir.1992) (citing additional precedents).

Plaintiffs have filed discovery demands; the Secretary has moved (1) for a protective order staying discovery, and (2) for judgment on the pleadings or for summary judgment.

For the reasons explained below, I allow in part the motion for protective order, and stay discovery pending a conference with counsel to fashion an Order Regulating Proceedings for Judicial Review of Agency Action, designed to move this civil action to "just, speedy, and inexpensive disposition," Fed. R.Civ.P. 1.

### II.

Defendant has filed, along with his amended answer, a multivolume set of documents described as the administrative record. A dispute may exist, however, as to its completeness and as to whether it is accurately described as the administrative record.

■ In general, judicial review of agency action taken on the basis of a formal record is based on that record and not to any extent based on evidence received in the district court. *Sierra Club,* 976 F.2d at 769. Also, the central purpose of the judicial review is to determine whether the agency's action complied with applicable legal requirements and was supported by evidence in the administrative record. *Id.*

■ To accomplish judicial review of agency action based on a formal record, a court ordinarily is not required to make findings of fact. Rather it is reviewing a record to determine whether agency action, as reflected in and based on that record, was or was not arbitrary and capricious and whether the agency action was or was not based on agency evaluation, within reason, of the information before the agency.

■ In the paradigm proceeding in a district court for review of agency action based on a formal record, attempts to use motions for judgment on the pleadings under Rule 12 or for summary judgment under Rule 56 to achieve prompt disposition are likely to be counterproductive. Rule 12 and Rule 56 and associated proceedings were not designed for judicial review of agency action. When a district court is judicially reviewing agency action, ordinarily no claim can reasonably be advanced that the court will be called upon to make findings on genuinely disputed material facts. Rather, as to material "facts," the court is at most reviewing agency findings. Thus, the requirement in Local Rule 56.1 of the District of Massachusetts that movant file, along with a motion for summary judgment, a statement of all material facts, none of which is genuinely in dispute, gives little, if any, guidance to either the moving party or an opposing party as to what to file in order to make clear to the court and opposing counsel the nature of the matters that the court needs to consider and decide in order to determine what judgment to enter. The matters likely to be in dispute *before the court*, in such a case, ordinarily are not matters of fact (either in the sense of historical fact or in the sense of evaluative fact). Rather, the court must decide whether findings of fact made by the agency were insupportable when measured against the evidence of record, and whether the agency action is for some other reason unlawful.

Moreover, even in exceptional cases (for example, when 5 U.S.C. § 706(2)(F) applies and some facts are subject to "trial *de novo*") it may be doubted that a district court is called upon to make "findings" in a sense relevant to invoking Rule 56. Also, even if the court is asked to hold that some exceptional circumstance has been shown that makes it proper for the court to receive affidavits or other forms of evidence to supplement the "administrative record," it may be doubted that the court is called upon to make "findings" in a sense relevant to invoking Rule 56.

It is true that precedents support the conclusion that determination of the scope of the administrative record for judicial review of agency action may require a trial.

> It could happen that a particular instance of judicial review of an EIS [Environmental Impact Statement] raises a "genuine" and "material" dispute of facts that requires a trial:. Did the agency *know*, for example, about some important matter that the EIS ignored (and which the commenting parties did not know about and could not have pointed out?) [?] ... Or, did the agency improperly rely upon some other important, but secret, information not part of the record?

*Valley Citizens for a Safe Env't v. Aldridge,* 886 F.2d 458, 460 (1st Cir.1989) (citations omitted).

It does not follow, however, (i) that the trial can appropriately be before a jury, or (ii) that the kind of trial required is one in which "the testimony of witnesses shall be taken orally in open court," Fed.R.Civ.P. 43(a), or (iii) that the paradigm summary judgment procedure under Rule 56 is either an appropriate means or the sole means for determining that there are no genuine disputes of fact that must be resolved by trial, or (iv) that "[f]indings of fact" made by a trial court "shall not be set aside unless clearly erroneous," Fed.R.Civ.P. 52(a).

■ It is well settled that the district court has a considerable range of discretion about receiving affidavits to flesh out a bare-bones administrative record. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Valley Citizens for a Safe Env't,* 886 F.2d at 460; *Love v. Thomas,* 858 F.2d 1347, 1356 (9th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989). Thus, the proceeding in which the administrative record is fleshed out is likely to be a proceeding analogous to "a motion [that] is based on facts not appearing of record," in which "the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." Fed.R.Civ.P. 43(e).

Moreover, the "facts" the district court may be required to "find" as to what did in fact occur during the agency decisionmaking

process are not necessarily "adjudicative facts," Fed.R.Evid. 201(a), that can be determined only at trial unless it appears "that there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c).

For example, on judicial review of agency action the objective of fleshing out the administrative record may be to provide a better basis for the district court's determination as to whether the agency action was "arbitrary or capricious." This determination is a mixed-law-fact determination less analogous to a paradigm "adjudicative fact" than to a "ruling" on admissibility of evidence. *Cf.* Fed.R.Evid. 201, advisory committee's note on proposed rule, subdiv. (b) ("There is a vast difference between ruling on the basis of judicial notice that radar evidence of speed is admissible and explaining to the jury its principles and degree of accuracy, or between using a table of stopping distances of automobiles at various speeds in a judicial evaluation of testimony [to make a ruling on its admissibility] and telling the jury its precise application in the case").

Perhaps a district court may conclude that it need not and should not resolve issues of credibility among contradictory affidavits in deciding whether all, some, only some parts, or none of a set of affidavits proffered by parties should be received in evidence to flesh out the administrative record. Moreover, even if a district court determines that it must resolve issues of credibility, either to determine admissibility or to determine what did occur, as a matter of historical fact, during the agency decisionmaking process, a higher court, on appeal from the district court's judicial review of agency action, may conclude that the district court's determination is appropriately viewed as not one of "adjudicative fact" in the ordinary sense, subject to review under the deferential standard prescribed in Federal Rule of Civil Procedure 52, but instead a determination of a fact used only as a premise for a legal ruling by the district court as to whether the agency decisionmaking was "arbitrary or capricious." Rules of evidence and procedure, including Federal Rule of Civil Procedure 56, may thus be inapplicable because they are

designed for determining "adjudicative" rather than "premise" facts. *See* Robert E. Keeton, *Legislative Facts and Similar Things: Deciding Disputed Premise Facts*, 73 Minn. L.Rev. 1, 29–34 (1988). A judicial obligation of reasonable notice and opportunity for hearing remains, *see id.* at 30–31, 36–40, but district courts may be allowed considerable discretion as to the form of the proceedings. In turn, appellate courts may apply different standards of review from those they apply to findings of adjudicative facts. *See id.* at 41–43.

### III.

The parties on each side of this case have asserted untenable positions in their motions and discovery demands now pending before the court.

■ Defendant's motion for judgment (whether it is called "judgment on the pleadings," or "summary judgment," or simply a "motion for judgment") is premature. When filing it, defendant's counsel was aware that the opposing party had already filed demands for discovery as to allegedly material facts. The defendant, as movant, did not and could not at the time of filing the motion meet its burden of demonstrating that the proposed discovery could not reveal evidence that would present a genuine dispute of material fact. As a prudential matter, I conclude that it is appropriate to discourage such premature motions. They tend to waste the resources of the parties and the court. If such a premature motion is filed, it is my practice to dismiss it without prejudice rather than to allow it to linger on the docket while the parties and the court are addressing disputed issues regarding proposed discovery.

■ A single example from plaintiffs' discovery demands is sufficient to demonstrate its indefensible breadth. Plaintiffs request that the Secretary "set forth all facts" that support the reasonableness of the administrative determinations at issue and "identify and describe all efforts" made by the Secretary between the years 1981 and 1988 in developing the PPS wage index. *See* Defendant's Memorandum in Support of Motion for

Protective Order or a Stay of Discovery, Docket No. 15 at 4, citing Plaintiffs' Interrogatories Nos. 16 and 17. Of course, a protective order is appropriate.

The plaintiffs' very broad requests for discovery in this case were made without any showing of good cause for either (1) a need for supplementation of the administrative record, or (2) a ground for asserting that some facts are subject to "trial *de novo*," or (3) a need for discovery to search for evidence that might be proffered in support of a request for leave to offer "evidence" at "trial," or hearing, either by oral testimony or in some other way.

Ordinarily "[t]he focal point for a court's review of an agency's decision is the administrative record." *Sierra Club,* 976 F.2d at 772 (citing precedents). Plaintiffs' submissions now before the court fall far short of showing good cause for broad-ranging, open-ended discovery. Discovery will be stayed pending a conference that has been scheduled for 3:30 p.m., March 12, 1993.

Counsel are directed to come to the conference prepared to propose to the court, jointly if they can agree and otherwise separately, the proposed terms of an Order Regulating Proceedings for Judicial Review of Agency Action. A preliminary draft of certain terms, prepared by the court for consideration by counsel, is attached to this Memorandum (Appendix 1). Also attached to this Memorandum is a Tentative Draft Order Regulating Nonjury Trial (Appendix 2) as referenced in Appendix 1.

## APPENDIX 1

(Tentative Draft of 3/5/93) [1]
Order Regulating Proceedings
for Judicial Review of Agency Action

—————————, 19—

### I. *Nature of the Case*

A. *Standard of Judicial Review*

1. This case involves judicial review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

---
**1.** *See* footnote 2.

2. The scope of review is limited by statute:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

B. *The Administrative Record*

On file with this court is a set of documents described by the defendant as the administrative record. Other filings before the court suggest that plaintiffs may deny that these documents constitute the administrative record and may seek to offer evidence to supplement this putative record.

## II. *Procedures Regarding Proposals to Supplement the Record*

### A. *Supplementation of the Record*

1. Ordinarily "[t]he focal point of a court's review of an agency's decision is the administrative record." *Sierra Club v. Marsh*, 976 F.2d 763, 769 (1st Cir.1992) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), and numerous other precedents).

2. Unless good cause is shown for doing otherwise, the court expects to apply the standard that the reviewing court is to hold the agency action unlawful if, and only if, the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . ." 5 U.S.C. § 706(2)(A).

3. If any party proposes that it is entitled to offer evidence to supplement the administrative record in any way, or that any facts are subject to trial *de novo* under 5 U.S.C. § 706(2)(F), it must first file with the court a submission showing cause for being allowed to offer evidence.

### B. *Proposed Discovery*

1. If any party proposes that it is entitled to discovery for the purpose of obtaining access to evidence that it might offer, at trial or in some other way, to supplement the administrative record, it must first file with the court a submission showing cause for being allowed such discovery.

2. The court expects to require a reasonable degree of specificity as to what discovery is sought and why there is reason to expect that the product of discovery would be properly received in supplementation of the administrative record, or for some other purpose, and that the proffered evidence would

---

2. Following stipulation of the parties, the court entered the Order Regulating Proceedings for Judicial Review of Agency Action on March 12,

---

be material to the disposition of this civil action.

### III. *Trial*

If any party shows cause for holding a trial in this case, for the purpose of receiving evidence to supplement the administrative record or for any other purpose, and fails to show that a jury trial is appropriate, the court expects (in consultation with counsel) to fashion an Order Regulating Nonjury Trial. Attached to this document is a Tentative Draft of the kind of order that would be considered for adaptation to the needs and circumstances of this case.

### IV. *Schedule for Proceedings Before Trial*

The court has not yet made a determination that a trial is appropriate in this case.

A further Case Management Conference is scheduled for \_\_\_\_\_ m., _____, 19\_\_, at which time the court will consider all pending proposals as to cause for supplementation of the administrative record, for discovery, and for submissions on the law applicable to this case. The following schedule is set for submissions to be filed before that conference:

a. Submission by any party as to cause for supplementation of the administrative record and as to proposed discovery in aid of doing so, to be served and filed on or before _____, 19\_\_.

b. Response to any submission under paragraph a, to be served and filed on or before _____, 19\_\_.

c. Simultaneous serving and filing of briefs, on or before _____, 19\_\_.

d.[2] Simultaneous serving and filing of reply briefs, on or before _____, 19\_\_.

APPENDIX 2
(Tentative Draft 1/28/93)
Order Regulating Nonjury Trial

_____, 19\_\_

### I. *Important Dates*

*FINAL PRETRIAL CONFERENCE DATE.* \_\_\_\_\_ m., _____, 19\_\_ (FPTC DATE).

---

1993. Section IV.c was amended to read "Reply Briefs due on or before Monday, June 28, 1993." Section IV.d was deleted.

*TRIAL DATE.* _____ m., _____, 19__ (TRIAL DATE). The court usually determines the TRIAL DATE during the Final Pretrial Conference and sets the trial for a date within SEVEN to TWELVE WEEKS from the FPTC DATE.

*OTHER IMPORTANT DATES.* If blanks are not filled in, these dates are fixed at the bracketed number of weeks before the TRIAL DATE.

[SIX] WEEKS before the TRIAL DATE/ _____, 19____
See III.2

[FOUR] WEEKS before the TRIAL DATE/ _____, 19____
See III.3.a

[THREE] WEEKS before the TRIAL DATE/ _____, 19____
See III.3.c, III.4

[TWO] WEEKS before the TRIAL DATE/ _____, 19____
See III.5, IV.2.d(3) [If Part VI applies, VI.7, VI.9]

[ONE] WEEK before the TRIAL DATE/ _____, 19____
See III.6 [If Part VI applies, VI.8]

[TWO] COURT DAYS before the TRIAL DATE/ _____, 19____
[If Part VI applies, VI.8]

DAILY DURING TRIAL
See IV.5, IV.6

---

## II. *Aims, Incentives, and Stipulations*

1. The central aim of this Order is to create a set of procedures tailored to fit the distinctive characteristics of this case and "to secure the just, speedy, and inexpensive determination of [this] action," Fed.R.Civ.P. 1.

2. Absent planning and an explicit understanding among counsel and the court about methods of proof, interrogation, and argument that will or will not be used, each advocate has an incentive toward extremely adversarial strategies and tactics. Of course, lawyers as well as judges know that extreme adversariness has its own downside risks. We also know, however, that pressures to respond in kind to contentious techniques used against you are hard to resist. Thus, when counsel expect that the court will allow excessive adversariness, the length and cost of the trial tend to increase. Distracting disputes over tangential matters interfere with the court's understanding of material issues. The quality of the trial deteriorates.

3. When counsel and the court plan in advance to adapt trial procedures to the needs of the particular case, the trial is likely to be shorter and less expensive to the parties and to the public than it otherwise would be. Of even greater significance, the trial is likely to be better in quality. A crisp, well-focused trial helps the court understand fully the material disputes of fact and law. The result is more likely to be a wise and fair decision on the merits.

4. By entering this Order Regulating Trial, the court gives notice regarding rules of proof, interrogation, and procedure it expects to apply in the absence of stipulation and invites the parties to suggest modifications and additions to Parts III–V of this Order that may more effectively tailor this trial to the needs of this case. The court encourages stipulations that will serve the aim that

> "the mode and order of interrogating witnesses and presenting evidence" be such as will "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment,"

Fed.R.Evid. 611(a). The kinds of agreements worthy of consideration include stipulations that the direct testimony of some or all witnesses will be taken in narrative or affidavit form (with rights of cross-examination reserved) rather than "orally in open court," as is the right of each party under Fed.R.Civ.P. 43(a), absent stipulation.

(Also, if the court decides to apply time limits to this case (Part VI of this Order), the court encourages counsel and the parties to consider a stipulation for shorter time limits than the court would otherwise impose.)

5. With the aims of promoting the court's and counsel's understanding of legal and factual issues and using efficiently the public and private resources committed to resolving this dispute, the court (1) will require that proposed findings and conclusions and affidavits used in lieu of oral direct examination be filed before trial commences, and (2) will aim for deciding the case immediately after oral argument at the conclusion of trial.

### III. Documents Served and Filed Before Trial

1. *Presumptive Dates.* The presumptive schedule for proceedings in this case is stated here (in Part III). If no date appears in a blank, the date is fixed by the bracketed direction. T is the Trial Date. Thus, for example, the date specified in brackets in paragraph 2 is 6 weeks before trial.

2. *Initial Proposals.* On or before \_\_\_\_ [T–6 weeks], counsel for the party having the burden of proof on any claim or defense must serve on other counsel (but not file with the clerk) three copies of Proposed Findings of Fact and Conclusions of Law. The statement will list each finding and each conclusion in a separate numbered paragraph. Counsel are encouraged to be concise and to propose only the findings and conclusions that are essential to a claim or defense under the legal theory or theories advanced. (If two or more parties in a multi-party case have common positions, their counsel are urged to make and serve Proposals and Marked Responses jointly as far as possible.)

3. *Marked Response and Additional Proposals.*

a. On or before _____ [T–4 weeks], counsel receiving Proposed Findings and Conclusions pursuant to paragraph 2 must file with the clerk and serve on other counsel a Marked Response. To prepare a Marked Response, you must mark a copy of the Proposed Findings and Conclusions as follows:

(1) Underline those parts (and only those parts) of the proposed findings that you genuinely dispute, and only those parts of the conclusions of law that you contest.

(2) Bracket any parts of the proposed findings that you contend are inadmissible.

(3) On the margin of the first page, show the name of the party on whose behalf you prepare the Marked Response and sign as counsel in accordance with Fed. R.Civ.P. 11.

b. Counsel receiving Proposed Findings and Conclusions pursuant to paragraph 2, though not required to do so, may also at the time specified above (Part 3.a), serve on other counsel three copies of Proposed Additional or Substitute Findings and Conclusions.

c. Counsel receiving Proposed Additional or Substitute Findings and Conclusions must, on or before _____ [T–3 weeks], file with the clerk and serve on other counsel a Marked Response (that is, a copy of the Proposed Additional or Substitute Findings and Conclusions marked in accordance with Part 3.a, above).

4. *Notice of Non–Consent to Affidavits in Lieu of Direct Testimony.* If, rather than consenting to the use of affidavits in lieu of oral, direct examination, a party wishes to have the testimony of witnesses "taken orally in open court," Fed.R.Civ.P. 43(a), that right may be exercised by written notice served and filed with the clerk on or before \_\_\_\_ [T–3 weeks]. If such a notice is filed, the provisions of this order regarding affidavits in lieu of direct examination will not apply to any witness called by any party; all other aspects of this order will remain in effect.

5. *Lists of Witnesses, Depositions and Exhibits.* Not later than _____ [T–2 weeks], each party must file the following:

a. A list of all prospective witnesses, together with the affidavits of each witness whose direct testimony is to be received by affidavit.

b. A list of depositions to be used at trial as part of the party's case in chief, identifying pages or portions to be used. Depositions (or parts thereof) to be used only for impeachment or in cross-examination need not be listed.

c. A list of exhibits to be introduced without objection, *identified by a single sequence of numbers,* regardless of which party is the proponent of an exhibit. Unless otherwise ordered, plaintiff's exhibits must commence with Exhibit 1 and defendant's exhibits with Exhibit 501. (Consultation among counsel must have occurred well in advance of the filing date to determine whether objections will be made to proffered exhibits.)

d. A list of marked items to be offered at trial, as to which an opposing party has reserved the right to object, *identified by a sequence of capital letters and the party designation (e.g.,* Pl's A, B, C ...; D's A, B, C ...). A party reserving the right to object must file in writing, on the date stated above in this paragraph, a statement of the grounds of objection.

6. *Notice of Intent to Cross–Examine.* Not later than _____ [T–1 week], counsel who wishes to cross-examine any witness whose direct testimony is to be received by affidavit must give written notice to opposing counsel identifying the witness(es) to be cross-examined.

## IV. *Procedure at Trial*

1. *Use of Proposed Findings.* All parts of proposed findings neither underlined nor bracketed on the copy filed with the clerk before the trial begins will be received in evidence at the beginning of trial as uncontested. No other proof on uncontested matters will be required or accepted. Objections to the admissibility of bracketed, non-underlined parts of the proposed findings will be heard when such parts are offered, unless otherwise ordered. When the relevance or materiality of evidence offered at the trial is questioned, counsel offering the evidence must be prepared to identify for the court the contested fact issue to which the offered evidence is relevant and material.

2. *Testimony.* Unless a party has elected otherwise in writing (see Part III.4), all direct examination of witnesses at trial must be presented by affidavit, except as provided in part d below.

a. An affidavit of a witness, constituting the direct examination, must be in admissible form. That is, each statement in the affidavit must be in form such that if the witness were making the statement orally at trial, in response to a question, it would be admissible under the Federal Rules of Evidence. Statements that would be objectionable as conclusions, or objectionable because of lack of essential foundation evidence, should be avoided. *Cf.* Fed.R.Civ.P. 56(e). To facilitate use at trial, the affidavit must be prepared in numbered paragraphs, each of reasonable length.

b. When an affidavit is offered in evidence, opposing counsel may present objections. If the court sustains an objection to any part of the affidavit, the proponent of the evidence may call the witness to the stand to attempt to cure or avoid grounds of objection and elicit evidence to replace that struck on objection. This may be done as a completion of the direct examination before cross-examination commences. The court may place limitations on the opportunity for such curative additions to the direct testimony if counsel has inexcusably presented an affidavit not in compliance with part 2.a above.

c. If notice has been given by opposing counsel in accordance with III.6 above, the witness must be present for cross-examination and redirect examination.

d. In the following circumstances a party may use a deposition or call a witness for oral examination:

(1) If notice is given in accordance with paragraph III.5.b above, the deposition of a witness may be used whenever Fed.R.Civ.P. 32 authorizes its use.

(2) An opposing party and anyone having authority to represent that party as officer, director, or managing agent— *cf.* Fed.R.Civ.P. 32(a)(2)—may be called for oral examination at trial. A party exercising this right must give notice in accordance with paragraph III.5.a above.

(3) For good cause shown and upon motion filed on or before _____ [T–2 weeks] (or filed thereafter but with good cause shown for late filing), all or part of the direct examination of any witness may be by oral examination at trial. The court may, even if no motion is filed, call a witness for oral examination to aid the court's fact finding; if this is done, the parties will be heard as to whether one or more other witnesses should also be called to assure fair opportunity to develop claims and defenses.

3. *Use of Depositions at Trial.* Except for good cause shown no deposition testimony may be introduced in a case in chief other than those pages or portions as to which notice was given in accordance with III.5.b above. This limitation does not apply to the use of deposition testimony for impeachment or in cross-examination.

4. *Stipulations.* Stipulations may be read at any time except during the testimony of a witness.

5. *Documents.* At least one-half hour before commencement of trial each day, counsel must furnish the court reporter with a copy of any document from which counsel intends to read that day, except depositions to be read by two people in question and answer form. Documents to be used during cross-examination are excepted.

6. *Motions and Other Papers Filed During Trial.* A party filing a paper in court rather than in the Clerk's Office must file, with the original, a copy of the first page. All filings will be given a docket number in the Clerk's Office.

7. *Rules of Interrogation and Objection.*

a. The objection of interrogating counsel to an answer that is nonresponsive will usually be sustained. Objections by other counsel solely on the ground that an answer is nonresponsive will usually be overruled. Sustaining such an objection is likely to lead to a new question that elicits exactly the same information as was stated in the struck answer, and time is wasted. Of course, if some other valid ground of objection is added, a statement that the answer was nonresponsive may be needed and appropriate to explain why no objection was made to the question.

b. The court will not instruct a witness to "answer YES or NO" to (1) a multiple question, (2) a question that requires the witness to make or accept an inference or characterization rather than merely acknowledging or denying an observable fact, or (3) a question that is argumentative in form or in substance.

c. Questions framed to have more impact as arguments than as requests for testimony that the witness is competent to give are out of bounds. They will be excluded on objection and may be excluded on the court's initiative, without objection.

d. Ordinarily, questions asking one witness to comment on the credibility of another are out of bounds.

## V. *Phased Trial*

If the number and nature of claims and defenses in a case make phased trial useful, the court is prepared to consider separation of the trial into two or more phases. For example, a central issue or issues may be tried first, with a recess to follow in order to allow the parties to reassess their positions before another phase proceeds, thus making more effective use of the resources of the parties and the court. If such a phased trial is to be used, the schedule stated in this order will be used for Phase I and a new order will schedule any subsequent phase(s). [Part VI, attached, will apply only if the court specifically so orders.]

## VI. *Time Limits*

These provisions regarding Time Limits apply only if the court specifically so orders. The other provisions of this Order Regulat-

ing Nonjury Trial ordinarily assure a trial of reasonable length. The court expects to invoke Part VI only if finding it likely that the trial would be longer than two court days without these provisions.

1. Time limits provide an incentive to make the best possible use of the limited time allowed. If the court finds a need for time limits and the parties are not able to agree upon what the limits will be, the court, after inviting submissions from the parties, will order presumptive limits, which will be subject to modification for good cause shown. Plainly, however, the limits that the court may order will not be as stringent as those the parties might agree would serve their mutual interests in achieving a shorter, less expensive, and better quality trial.

2. Absent agreement of the parties to time limits that are approved by the court, the court will order a presumptive limit of a specified number of hours for this trial, to be allocated equally between opposing parties (or groups of aligned parties) unless otherwise ordered for good cause.

3. A request for added time will be allowed only for good cause. An explicit purpose of this provision is to create an incentive for using time exclusively on issues material to disposition on the merits.

4. In determining whether to allow a motion of any party for an increased allotment of time, the court will take into account (a) whether or not that party has used the time from commencement of trial forward in a reasonable and proper way, in compliance with all orders regulating the trial, (b) the party's proffer with respect to the way in which the added time requested would be used and why it is essential to fair trial, and (c) any other facts the party may wish to present in support of the motion, if determined by the court to be material. The court will be receptive to motions for reducing or increasing allotted time to assure that allotments are fair among the parties and adequate for developing the evidence. Any party that makes only proper use of its time throughout the trial is assured that an extension will be allowed if more time is needed to present all its material and admissible evidence adequately.

5. Presumptive allotments of time to a party will be stated as a total number of hours available to that party, rather than allocations of times for particular witnesses or proceedings. Thus, each party will be free, without a showing of good cause, to allocate time as that party chooses among different uses—opening statement, direct and cross-examination of various witnesses, closing argument, objections, and motions—as long as the party's total allotment is not exceeded.

6. Time taken to argue objections will be charged against the time allocation of the party against whom the court rules, and will be allocated between parties if the court rules partly for and partly against the objecting party.

7. Not less than *[TWO] WEEKS before the TRIAL DATE*, each party (or group of aligned parties) must serve on the opposing party (or group of aligned parties) and file its NOTICE OF DIRECT EXAMINATION (1) listing the witnesses it intends to call for oral testimony and an estimate of the time to be used in direct examination of each witness, (2) listing the precise pages and lines of any deposition testimony to be offered during the case in chief, with time estimates for reading that testimony into evidence, (3) affidavits of any expert witnesses whose depositions have not been taken, fairly summarizing the substance of their expected testimony, fully disclosing every opinion to be expressed, and estimating the time of direct examination, and (4) listing all the exhibits it intends to offer. If the expected content of direct examination and exhibits has not previously been disclosed, the NOTICE must include a fair summary of the content of each direct examination and each exhibit.

8. *Not less than [ONE] WEEK before the TRIAL DATE,* each party (or group of parties) must serve and file its NOTICE OF CROSS-EXAMINATION estimating time to be used in cross-examination of each of the opposing party's listed witnesses. If either party, after seeing the opposing party's NOTICE OF DIRECT EXAMINATION, proposes to call additional witnesses or offer

additional exhibits, it must, when serving and filing its NOTICE OF CROSS–EXAMINATION, also serve and file a SUPPLEMENTAL NOTICE of DIRECT EXAMINATION, including time estimates. An opposing party's SUPPLEMENTAL NOTICE OF CROSS–EXAMINATION must be filed not later than TWO COURT DAYS BEFORE THE TRIAL DATE.

9. The parties are encouraged to confer and agree upon witness and exhibit lists and time limits for direct and cross-examination, and to file a stipulation *not less than TWO WEEKS before the TRIAL DATE* in lieu of the separate submissions otherwise required by paragraphs 7 and 8.